IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MCS INDUSTRIES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-2563 |
| | : | |
| MICHAEL'S STORES, INC., ET AL. | : | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                **APRIL 29, 2022**

      This is an action for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1117 and for copyright infringement under 17 U.S.C. § 502. Named as Defendants in the Second Amended Complaint ("SAC") are Michaels Stores, Inc., The Michaels Companies, Inc., Michaels Stores Procurement Company, Inc. (collectively referred to as the "Michaels Defendants") and Harbortown Industries, Inc. Presently before the Court is the motion of the Michaels Defendants to dismiss the SAC pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is denied.

      Rule 8(a) "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

      To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in

1

fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. (quotation and citation omitted). Speculative and conclusory statements are not enough. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions...a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

 Furthermore, the court must construe the complaint in the light most favorable to the plaintiff. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)). However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

 Finally, a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

 Plaintiff manufactures and distributes picture frames for sale at various retailers throughout the United States. SAC at ¶ 36.

Defendant Michael Stores, Inc. is a corporation that owns and operates retail stores. SAC at ¶15. Defendant, The Michaels Companies, Inc. is also a corporation that owns and operates retail stores. *Id. at* ¶16. Defendant Michaels Stores Procurement Company, Inc. is a corporation and wholly owned subsidiary of Defendant The Michaels Companies, Inc. "that enters into procurement contracts for inventory for Michaels stores across the country." *Id*. at ¶17. Defendants Michaels Stores, Inc. and Michaels Stores Procurement Company are each subsidiaries of Defendant Michael Companies, Inc. *Id*. at ¶18. The SAC alleges that the Michaels Defendants "all share overlapping and inextricably intertwined roles in the governance and operation of all Michaels retail stores, including in the sourcing and selling of product-and therefore each and every allegation applies to all three Michaels Defendants." *Id*. at ¶19. Plaintiff alleges that Defendant Harbortown Industries, Inc. ("Harbortown") is a "manufacturer that was directly involved in the design, manufacture, and distribution of retail picture frames that are the subject of this suit." *Id*. at ¶ 21.

Plaintiff "owns federal U.S. Trademark Registration No. 2814896, registered in the United States Patent and Trademark Office ("USPTO"), for the mark FORMAT for 'picture frames.'" *Id*. at ¶ 29. Plaintiff has granted non-exclusive licenses to certain legal entities that "allow each of these entities to use the FORMAT mark on or in connection with the goods to which the licenses pertain." *Id. at ¶ 31.*

Plaintiff has also registered copyrights for two distinct sets of instructions for its FORMAT frames--the Easel Twist Format Instruction and the Ramp Easel Format Instruction. *Id*. at ¶¶ 32-34.

Plaintiff alleges that it "manufactures and distributes the FORMAT Frames under a common brand made recognizable by the FORMAT mark, as well as the design and packaging of the product." *Id*. at ¶36. Included with each FORMAT frame are the Plaintiff's copyrighted instructions that bear the FORMAT mark. *Id*. at ¶ 37.

Plaintiff alleges that "FORMAT Frames are the top selling picture frame in the industry and represent nearly 45 percent of all frames produced by MCS, and account for 3-5% of MCS' total sales annually." *Id*. at ¶ 38.

According to the SAC, in April of 2021, Plaintiff discovered that the Michaels Defendants were selling picture frames under the brand name "Structure" in their retail stores. *Id*. at ¶55. The Structure picture frames are manufactured by Plaintiff's competitor, Defendant Harbortown. *Id.* at ¶ 9. According to Plaintiff, the Structure Product "has nearly identical packaging and appearance as FORMAT Frames and are only distinguishable by the brand name placed on the front of the product's package." *Id*. at ¶ 56. Plaintiff further alleges that after a Structure picture frame is purchased at Defendant, the Structure frame appears on the Michaels Defendants' sales receipt as a "FORMAT" product. *Id*. at ¶ 57. Plaintiff further alleges that each package for the Structure frame also contains word-for-word reproductions of its copyrighted FORMAT instructions bearing the FORMAT trademark in the header of the "Format Frame Instructions" without making any reference to "Structure." *Id*. at ¶¶ 12, 71. These instructions become visible to a prospective buyer when the buyer turns over the frame and sees them through the transparent clear wrapping. *Id.* at ¶ 11.

Plaintiff alleges that the inclusion by the Michaels Defendants of Plaintiff's FORMAT trademark and its copyrighted instructions on the Defendants' Structure

4

picture frames "creates confusion for consumers, who are left to believe that 'Structure' products are associated with the FORMAT brand." *Id*. at ¶ 60. Plaintiff alleges that the Structure product "is available in most, if not all, of Michael's locations and offered for sale on Michaels' website." *Id*. at ¶ 61. Plaintiff further alleges that the Michaels Defendants have admitted to continuing to sell Structure brand picture frames containing Plaintiff's copyrighted instructions which bear the FORMAT trademark in its stores despite having been served with the original Complaint in this matter. *Id*. at ¶ 63.

Plaintiff also alleges that the Michaels Defendants engaged in prior trademark infringement when it used the Plaintiff's TRENDSETTER trademark for "picture frames" on products not produced by Plaintiff. *Id.* at 50. Plaintiff alleges that "in an effort to maintain stable business relations, MCS responded by permitting a one-time use of its TRENDSETTER mark on the remaining inventory held by Michaels in exchange for a two-year agreement on certain product lines, and Michaels agreement to make no further use of MCS' TRENDSETTER trademark." *Id.* at 52.

Plaintiff alleges that Defendant Harbortown manufactures the "Structure" picture frames and was "directly involved in the decision to include the Format Instructions with Structure Frames." *Id*. at ¶ 75. Plaintiff claims that Harbortown has "willfully and intentionally designed and manufactured picture frames that infringe MCS's trademarks and copyrights to retail stores throughout the United States." *Id*. at ¶ 77.

Plaintiff seeks damages for the harm caused to its reputation and to the value of its trademarks and copyrights. According to Plaintiff, "[i]n 2020, following the introduction of [Defendants'] 'Structure' brand frames, MCS incurred a 70% reduction in sales of FORMAT Frames to Michaels, resulting in over one million dollars in lost

5

revenue as compared to the year prior." *Id*. at ¶ 82. "In 2021, MCS lost 100% of its business selling FORMAT Frames to Michaels, resulting in a loss of more than $1.5 million as compared to sales in 2019 prior to the introduction of 'Structure' brand frames." *Id.* at ¶ 83. Plaintiff also seeks permanent injunctive relief, claiming that without such relief, Plaintiff will "suffer irreparable harm in the form of lost market share, permanent price erosion, goodwill, harms and losses for which there is no adequate remedy at law." *Id*. at ¶ 88.

In Count One, Plaintiff asserts a claim against all Defendants for trademark infringement/injunctive relief based on the Defendants' alleged use of the FORMAT mark in connection with the manufacture and distribution of the Structure picture frame. *Id*. at ¶¶ 92-95. In Count Two, Plaintiff asserts a claim against all Defendants for violation of the Lanham Act, claiming that Defendants' false and misleading representations have caused and are likely to continue to cause consumer confusion as to the quality of Plaintiff's products. *Id*. at ¶¶ 96-104. In Count Three, Plaintiff asserts a claim against all Defendants under the Lanham Act for trademark counterfeiting, claiming Defendants intentionally usurped the FORMAT trademark and used it on their own identical frames. According to Plaintiff, these actions constitute trademark counterfeiting. *Id*. at ¶¶ 94-102.[1] In Counts Four and Five, Plaintiff seeks injunctive relief and damages for Defendants' alleged willful infringement of Plaintiff's copyrighted instructions. *Id*. at ¶¶103-110.

The Michaels Defendants first argue that the SAC must be dismissed pursuant to Fed. R. Civ. P. 8(a) because it is improperly vague and fails to provide each Michaels

---

[1] Plaintiff has mis-numbered the allegations contained in Counts Three, Four and Five of the SAC.

Defendant with notice of the accusations against each. According to the Michaels Defendants, Plaintiff's allegations amount to group pleading and therefore do not satisfy Rule 8. See e.g., *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) ("[T]he Complaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because Plaintiff fails to differentiate between the defendants."). The Court does not agree.

The SAC clearly alleges that the Michaels Defendants are each responsible for the specified acts of trademark and copyright infringement. For instance, the SAC specifically alleges that the Michaels Defendants "all share overlapping and inextricably intertwined roles in the governance and operation of all Michaels retail stores, including in the sourcing and selling of product-and therefore each and every allegation applies to all three Michaels Defendants." *Id*. at ¶19. According to the SAC, the Michaels Defendants are not distinct and unaffiliated entities as are the defendants in most cases wherein courts apply Rule 8(a). Indeed, all three entities are affiliated entities as evidenced by their joint representation in this case by the same counsel who has filed a single motion to dismiss on behalf of all the Michaels Defendants. And even defense counsel in his motion to dismiss refers to each of the Michaels Defendants collectively as "Michaels."

The Michaels Defendants next argue that Plaintiff has no standing to sue because it has failed to factually plead a concrete example of damages.

Plaintiff has actually devoted Part V of the SAC to its claim for damages and request for preliminary injunction. Plaintiff seeks compensatory damages for the Defendants' alleged infringement of Plaintiff's trademark and copyrighted instructions.

*Id*. at ¶ 80. Specifically, Plaintiff alleges that in 2020, following the introduction of Michaels' 'Structure' brand frames, Plaintiff incurred a 70% reduction in sales of FORMAT Frames to Michaels, resulting in over one million dollars in lost revenue as compared to the year prior. *Id.* at ¶ 82. The SAC further alleges that in 2021, "[Plaintiff] "lost 100% of its business selling FORMAT Frames to Michaels, resulting in a loss of more than 1.5 million as compared to sales in 2019 prior to the introduction of 'Structure' brand frames." *Id*. at ¶ 83. Plaintiff claims the "lost revenue is directly caused by Michaels and Harbortown effectively replacing the FORMAT brands with a cheaper knock-off 'Structure' product that infringes [Plaintiff's] intellectual property." *Id.*at ¶ 84.[2] Plaintiff also seeks treble damages, statutory damages and attorneys' fees. *Id*. at ¶ 91.

While Plaintiff's claims for damages are couched in general terms, this case is currently before the Court on a motion to dismiss, not one for summary judgment. Therefore, Plaintiff will be allowed to flesh out its claim for damages through the discovery process, after which the Defendants may renew their argument as part of a motion for summary judgment.

The Michaels Defendants next claim that Plaintiff has failed to state a claim for trademark infringement. To prevail on its claim of trademark infringement under the Lanham Act, Plaintiff must establish that (1) the mark is valid and protectable; (2) Plaintiff owns the mark; and (3) Defendants' use of the mark to identify goods or services is likely to cause confusion. *Checkpoint Sys., Inc. v. CheckPoint Software Techs., Inc.*, 269 F.3d 270, 279 (3d Cir. 2001). The first two elements are not in dispute.

---

[2] The Michaels Defendants argue in their motion to dismiss that any lost sales suffered by Plaintiff were the result of the Michaels Defendants terminating their relationship with Plaintiff in 2020 as supplier of the picture frames bearing the FORMAT mark. While this argument may ultimately prevail, it is based on matters outside the pleadings and therefore not proper for consideration on a motion to dismiss.

The third element, "a likelihood of confusion," exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *E.A. Sween Co.*, *Inc. v. Deli Exp. of Tenafly*, LLC, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) (quotation omitted). "The single most important factor in determining likelihood of confusion is mark similarity." *A & H Sportswear*, *Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000).

From the allegations in the SAC, it is clear that Plaintiff is not contending that the Defendants are using a competing mark to compete with Plaintiff's FORMAT mark. Rather, Plaintiff alleges that Defendants are using the **exact** same instructions for their Structure picture frame that Plaintiff uses for its FORMAT frame and which bear Plaintiff's own FORMAT trademark. In addition, Plaintiff alleges, and the exhibits to the SAC support, Plaintiff's contention that the instructions that accompany the Structure product and that bear the Plaintiff's FORMAT trademark can be visually seen by a prospective buyer by simply turning the packaged frame over where the instructions can indeed be seen by a prospective buyer through the transparent clear wrapping. SAC at Exhibit L.[3]

---

[3] The Michaels Defendants also argue that neither the name FORMAT nor the name Structure is actually a source identifier for these picture frames. Rather, the Michaels Defendants state that they sell all picture frames including those containing the FORMAT and Structure names under their own brand name, STUDIO DÉCOR. As a result, the Michaels Defendants contend that there can be no possibility of confusion that any frame is associated with Plaintiff as opposed to the Michaels Defendants. The Court does note that the name STUDIO DÉCOR appears on the frames labeled as FORMAT and Structure. However, the history and relevance of the STUDIO DÉCOR name is not contained in the pleadings and therefore may not be considered at this stage of the proceedings. Moreover, whatever the relevance of the STUDIO DECOR name is, its use by the Michaels Defendants would not justify the use of Plaintiff's FORMAT mark on the instructions included with the Structure frames manufactured by Harbortown.

Defendants argue that Plaintiff has only alleged in conclusory fashion that consumers are likely to be confused by the Defendants' use of Plaintiff's trademark on its instructions for its Structure product and that any alleged infringement from reading the instructions takes place **after** a sale is completed.

"[G]enerally speaking likelihood of confusion is a question of fact.... [and] the plaintiff is not required to prove the likelihood of confusion at the pleading stage." *Interlink Prod. Int'l, Inc. v. F & W Trading LLC,* No. CV151340MASDEA, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016) (quoting *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 859 (E.D. Pa. 1985)). Though Defendants argue that there is no likelihood of confusion between Plaintiff's FORMAT mark contained on the instructions for Defendants' Structure picture frames, the Court finds that such a fact-laden inquiry is more appropriately assessed at the summary judgment stage. *Lorillard Techs., Inc. v. NJ Ale House*, LCC, No. CIV. 2:14-2044 KM, 2015 WL 1197531, at *9 (D.N.J. Mar. 13, 2015); *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 860 (E.D. Pa. 1985) ("Dismissal pursuant to Rule 12(b)(6) is appropriate in only the most extreme trademark infringement and unfair competition cases, such as where the goods are unrelated as a matter of law."). Accordingly, taking all reasonable inferences in a light most favorable to Plaintiff, the Court finds that it is plausible that the presence of Plaintiff's trademark on the Defendants' instructions that accompany its Structure frames and which can be seen by a prospective buyer through the transparent clear wrapping could create confusion for consumers who are left to believe that 'Structure' products are associated with the FORMAT brand." SAC at ¶ 60. Whether Plaintiff can produce evidence that the instructions are actually part of a customer's buying decision

or that customers actually saw the instructions before making a purchase is a matter for discovery.Therefore, Plaintiff's complaint states plausible claims for relief under the Lanham Act as to Counts I and II.

Defendants next argue that Plaintiff has failed state a claim for trademark counterfeiting. Counterfeiting is defined as "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 581 (E.D. Pa. 2002) (Reed, Jr., J.) (quoting *Playboy Enters., Inc.*, 1998 WL 767440, at *7); see also 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 25:15.10 (5th ed. 2019) (providing the same definition).

To establish trademark counterfeiting, a plaintiff must plausibly plead that: (1) "the defendant 'infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that i[t] was a counterfeit or was willfully blind to such use.'" *Pennzoil-Quaker State Co. v. Smith*, No. 2:05-cv-1505, 2008 WL 4107159, at *20 (W.D. Pa. Sept. 2, 2008) (alteration in original) (quoting *Veit*, 211 F. Supp. 2d at 580–81).

Here, Plaintiff alleges that Defendants infringed its registered trademark for FORMAT by including in its Structure frames the exact same instructions bearing the FORMAT mark that Plaintiff used for its FORMAT picture frame. SAC at ¶¶ 69-71. As for the second element of willfulness, Plaintiff alleges that Defendants continued to sell its Structure picture frame containing the infringing instructions even after being served with this suit. *Id.* at ¶¶ 53, 62 and 72. Clearly, Plaintiff has preliminarily and plausibly pled a claim for trademark counterfeiting.