IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MCS INDUSTRIES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-2563 |
| | : | |
| MICHAEL'S STORES, INC., ET AL. | : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                                 **AUGUST 9, 2022**

Plaintiff originally brought this action for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1117 and for copyright infringement under 17 U.S.C. § 502 against Defendants Michaels Stores, Inc., The Michaels Companies, Inc., and Michaels Stores Procurement Company, Inc. (collectively referred to as the "Michaels Defendants"). In a Second Amended Complaint ("SAC"), Plaintiff added Harbortown Industries, Inc. ("Harbortown") as a Defendant. The Michaels Defendants filed a motion to dismiss the SAC as to them for failure to state a claim. The Court denied this motion in a Memorandum and Order filed on April 29, 2022 (ECF 74 and 75). Presently before the Court is a motion filed by Defendant Harbortown to dismiss the SAC as to it for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

**STANDARD OF REVIEW**

A Rule 12(b)(2) motion for lack of personal jurisdiction "is inherently a matter which requires resolution of factual issues outside the pleadings." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990). The "plaintiff bears the burden of

1

establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). In responding to the defendant's Rule 12(b)(2) motion, the plaintiff need not "rely on the bare pleadings alone...." *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines*, 673 F.2d 700 (3d Cir. 1982). Courts reviewing a motion to dismiss for lack of personal jurisdiction "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *Pinker*, 292 F.3d at 368.

Plaintiff manufactures and distributes picture frames for sale at various retailers throughout the United States. SAC at ¶ 36. Plaintiff "owns federal U.S. Trademark Registration No. 2814896, registered in the United States Patent and Trademark Office ("USPTO"), for the mark FORMAT for 'picture frames.'" *Id*. at ¶ 29. Plaintiff has granted non-exclusive licenses to certain legal entities that "allow each of these entities to use the FORMAT mark on or in connection with the goods to which the licenses pertain." *Id. at ¶ 31.*

Plaintiff has also registered copyrights for two distinct sets of instructions for its FORMAT frames--the Easel Twist Format Instruction and the Ramp Easel Format Instruction. *Id*. at ¶¶ 32-34.

Plaintiff alleges that it "manufactures and distributes the FORMAT Frames under a common brand made recognizable by the FORMAT mark, as well as the design and packaging of the product." *Id*. at ¶ 36. Included with each FORMAT frame are the Plaintiff's copyrighted instructions that bear the FORMAT mark. *Id*. at ¶ 37.

According to the SAC, in April of 2021, Plaintiff discovered that the Michaels Defendants were selling picture frames under the brand name "Structure" in their retail stores. *Id*. at ¶ 55. The Structure picture frames are manufactured by Plaintiff's competitor, Defendant Harbortown. *Id.* at ¶¶ 9, 75. According to Plaintiff, the Structure Product "has nearly identical packaging and appearance as FORMAT Frames and are only distinguishable by the brand name placed on the front of the product's package." *Id*. at ¶ 56. Plaintiff further alleges that each package for the Structure frame also contains word-for-word reproductions of its copyrighted FORMAT instructions bearing the FORMAT trademark in the header of the "Format Frame Instructions" without making any reference to "Structure." *Id*. at ¶¶ 12, 71. Plaintiff alleges that these instructions become visible to a prospective buyer when the buyer turns over the frame and sees them through the transparent clear wrapping. *Id.* at ¶ 11.

The SAC alleges that Harbortown is a corporation existing under the laws of the state of Illinois, with its principal place of business located at 28477 N Ballard Dr. Lake Forest, IL 60045. *Id*. at ¶ 20. The SAC further alleges that Michaels' corporate representative has averred under oath that Harbortown was directly involved in the decision to include the FORMAT Instructions with Structure Frames. *Id*. at ¶ 76. The SAC also alleges that Harbortown has been willfully manufacturing and distributing "Structure" products that include reproductions of the infringing Instructions, thus obtaining a commercial and economic benefit from the infringement to the detriment of Plaintiff. *Id.* at ¶ 77. Finally, the SAC alleges that Harbortown "willfully and intentionally designed, manufactured, and distributed picture frames infringing [Plaintiff's] trademarks and copyrights to retail stores throughout the United States. According to Plaintiff, it is

"abundantly obvious that Harbortown's use of an identical reproduction of the Instructions infringes Plaintiff's federally registered trademarks and copyrights." *Id*. at ¶¶ 77-78.

In Count One, Plaintiff asserts a claim against all Defendants for trademark infringement/injunctive relief based on the Defendants' alleged use of the FORMAT mark in connection with the manufacture and distribution of the Structure picture frame. *Id*. at ¶¶ 92-95. In Count Two, Plaintiff asserts a claim against all Defendants for violation of the Lanham Act, claiming that Defendants' false and misleading representations have caused and are likely to continue to cause consumer confusion as to the quality of Plaintiff's products. *Id*. at ¶¶ 96-104. In Count Three, Plaintiff asserts a claim against all Defendants under the Lanham Act for trademark counterfeiting, claiming Defendants intentionally usurped the FORMAT trademark and used it on their own identical frames. According to Plaintiff, these actions constitute trademark counterfeiting. *Id*. at ¶¶ 94-102. In Counts Four and Five, Plaintiff seeks injunctive relief and damages for Defendants' alleged willful infringement of Plaintiff's copyrighted instructions. *Id*. at ¶¶103-110.

**PERSONAL JURISDICTION**

"A federal district court may assert personal jurisdiction over a nonresident of a state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987) (citing Fed. R. Civ. P. 4(e)). This Court sits in Pennsylvania, which permits jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b); *see also D'Jamoos ex rel. Estate of Weingeroff v.*

*Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Therefore, to determine whether personal jurisdiction can be exercised over Defendant, the Court must evaluate whether, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Defendant has "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *D'Jamoos*, 566 F.3d at 102 (quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

There are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 (1984). General jurisdiction exists where the defendant has contacts with the forum state that "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted)). General jurisdiction does not require the underlying cause of action to be related to the defendant's activities in the state. Plaintiff does not contend that the Court has general jurisdiction over Harbortown.

On the other hand, a court has specific jurisdiction if "a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985)). "Because this analysis depends on the relationship between the claims and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

Generally, a district court analyzing its specific jurisdiction over a particular claim must conduct a three-part inquiry. *Marten,* 499 F.3d at 296. First, the court asks whether the defendant "purposefully directed his activities at the forum." *Id.* (internal citation omitted). Second, the court determines whether the plaintiff's claim "arise[s] out of or relate[s] to at least one of those specific activities." *Id.* (internal citation omitted). Third, and finally, "courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (internal citation omitted).

The Supreme Court has established a slightly refined version of the traditional test that applies to intentional tort claims such as the ones in Plaintiff's SAC. *O'Connor v. Sandy Lane Hotel Co., Ltd*, 496 F. 3d 312, 325 n.2 (3d Cir. 2007).[1] In *Calder v. Jones*, 465 U.S. 783, 790 (1984), a defamation action, the Supreme Court endorsed a test of specific jurisdiction which places emphasis upon the effects of a defendant's actions in the forum state. According to our Court of Appeals, personal jurisdiction is established under this test if the plaintiff shows:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]

---

[1] Our Court of Appeals has described "unfair competition," and causes of action under the Lanham Act as intentional business torts. *See Granite State Ins. Co. v. Aamco Transmissions, Inc.,* 57 F.3d 316, 321 (3d Cir.1995) ( "[T]he Lanham Act is derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts.") (citation omitted).

6

> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). This test is known as the "effects test." In *Marten v. Godwin*, 499 F. 3d 290, 297-98 (3d Cir. 2007), our Court of Appeals explained the interplay between the three "effects test" elements:

> Only if the "expressly aimed" element of the effects test is met need we consider the other two elements. To establish that the defendant "expressly aimed" his conduct, the plaintiff has to demonstrate the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum. If a plaintiff fails to show that the defendant manifest[ed] behavior intentionally targeted at and focused on the forum, the plaintiff fails to establish jurisdiction under the effects test.

*Id*. (certain marks and citations omitted) (alteration in original).

In other words, *Calder's* test is not necessarily satisfied by simply asserting that the plaintiff's principal place of business was located in the forum. *IMO Indus.* 155 F. 3d at 265. A plaintiff seeking to satisfy *Calder's* analysis must "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.*

### **DISCUSSION**

In support of its motion to dismiss for lack of personal jurisdiction, Harbortown relies on the Declaration of Keith Yanko, its Senior Vice President of Sales. Yanko avers that:

1. Harbortown is not registered to do business in Pennsylvania.
2. Harbortown has no corporate parents, subsidiaries, or affiliates in Pennsylvania.

3. Harbortown does not own any property or maintain an office in Pennsylvania.
4. Harbortown has no employees in Pennsylvania. Jack Smith works as an independent contractor in Holland, Pennsylvania for Harbortown. He works out of his own home. His responsibilities involve outside sales to the pharmacy chain, CVS. He has never been involved in any activities relating to Michaels' account.
5. I understand that his litigation concerns certain picture frames sold in Michaels stores. As Michaels' current vendor for picture frames, Harbortown's role is to coordinate the availability of the frames to Michaels in China. Upon receiving a purchase order from Michaels, Harbortown communicates with a vendor in China to facilitate the manufacture of the frames, which are then delivered to Michaels in China, where Michaels took possession of the frames.
6. Harbortown has never imported any picture frames for Michaels into Pennsylvania. Harbortown also does not offer, promote, market sell, or distribute any picture frames for Michaels in Pennsylvania. Nor does Harbortown direct anyone to do so.

ECF 62-2.

Because Yanko's affidavit did not contain any averments pertaining to how reproductions of the Plaintiff's FORMAT Instructions allegedly ended up in the packaging for Harbortown's Structure picture frames, the Court directed Harbortown to submit a supplemental affidavit to that effect. [ECF 83].

In his supplemental affidavit, Yanko advises that he conducted an investigation into how the Plaintiff's FORMAT Instructions ended up in the Harbortown Structure frame packaging. Basically, Yanko concludes that the inclusion of FORMAT Instruction sheet as in the Pre-Production samples of the Harbortown frames was "inadvertent[]." [ECF 84 at ¶¶ 8,9]. Yanko further avers that "[u]pon learning from Michaels that the

frames should not have included the [FORMAT] instructions in the back of the packaging, and before Harbortown was sued [in this matter], Harbortown and Michaels cooperated to do the following on an expedited basis: (a) destroy the product in Michaels' stores with that format instruction sheet; (b) destroy any copies of the format instruction sheet at the factory; (c) rework approximately 400,000 frames from the Michaels distribution centers to remove the existing instruction sheet and replace it with a new instruction sheet; and (d) immediately begin using the new instruction sheet on all future shipments from Harbortown's factory in China." *Id* at ¶10.

Yanko further avers that none of the activity he described in his affidavit occurred in Pennsylvania. According to Yanko, "Harbortown's design team is in Illinois, the factory that made the samples and production is in China and Michaels is in Texas." *Id*. at ¶11.

Plaintiff has submitted the counter-affidavit of Michael Pyle ("Pyle"), the Senior Director for Product Engineering & Asia Operations for Plaintiff. [ECF 85]. Pyle avers that based on the long history between Plaintiff and Harbortown as competitors and their ongoing interactions within the industry, he "believe[s]" Harbortown is "very familiar" with Plaintiff's picture frames and their "associated Trademark and Copyrights." ECF 85 at ¶ 4. Pyle "believes", based on his "experience and after reviewing the supporting data", that Harbortown's reproduction of the FORMAT Instructions was not inadvertent but "intentional." *Id*. at ¶ 7. As support, he points out that that the copy of the FORMAT Instructions Yanko claims was submitted to the factories for reproduction contain an [Plaintiff] Part Number located on the bottom right of the Instruction Sheet. *Id*. However, Pyle avers that the "final production of Structure frames" included a copy

9

of the Format Instructions that "**did not** have the MCS Part Number." *Id*. According to Pyle, this difference is important because it shows that "Harbortown intentionally removed the [Plaintiff's] Part Number from the Format's Instructions before copying them for mass production to be included in Structure products." (*Id.* and ECF 85-3) (emphasis in original.)

Harbortown responds to Pyle's averment that Harbortown's reproduction of the FORMAT Instructions was intentional, claiming that Pyle cannot credibly attest to Harbortown's state of mind, especially since the averment is based merely on Pyle's belief [ECF 86-1].

After reviewing the record, the Court finds that Plaintiff has not satisfied the third element of the *Calder* "effects test" i.e., that Harbortown expressly aimed any conduct at Pennsylvania.

Even assuming that Harbortown intentionally removed the Plaintiff's Part Number from the FORMAT Instructions before copying for mass production, the Court finds that such actions, while perhaps evidence of Harbortown's intentional actions against Plaintiff, are not evidence that Harbortown expressly aimed these intentional actions at Pennsylvania. Although Harbortown may have known that Plaintiff was a Pennsylvania corporation and that Plaintiff could experience some of Harbortown's alleged tortious activity in Pennsylvania, Plaintiff has not submitted any evidence of any actions Harbortown took that were specifically targeted at Pennsylvania as opposed to targeted at Plaintiff itself. For instance, Plaintiff has not presented any evidence that Harbortown deliberately reached into Pennsylvania and contacted a Pennsylvania employee of Plaintiff in order to commit its intentional tort. Nor did Plaintiff establish that

any of Harbortown's actions in reproducing the Plaintiff's FORMAT instructions arose out of or related to any actions taken by Harbortown in Pennsylvania.

Because Plaintiff has failed to establish that Harbortown expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity, the Court finds that Plaintiff has not satisfied the *Calder* "effects" test for specific personal jurisdiction. As a result, the Court does not have personal jurisdiction over Harbortown.

## **TRANSFER**

Because the Northern District of Illinois is a proper venue and has personal jurisdiction over Harbortown, the action could have been filed there at the time it was commenced and may therefore be transferred there pursuant to 28 U.S.C. § 1631 if it is in the interest of justice. Such a transfer is in the interest of justice because it will prevent the duplication of filing costs as well as other administrative burdens that may arise from a dismissal. *See Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004) ("Normally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." (quoting *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 257 F. Supp. 2d 717, 734 (S.D. N.Y. 2003))). The Court will therefore sever Plaintiff's claims against Harbortown from this action and direct the clerk to transfer the claims against only

Harbortown to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631.[2]

---

[2] The Court rejects Harbortown's request that the Court dismiss rather than transfer this action based on Plaintiff's "clear disregard for known caselaw" and Plaintiff's "clear disregard for pleading venue properly." [ECF 68 at p. 13].